

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JASON BRADLEY GLASS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 2:13-cv-01014-LSC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF OPINION**

## I.    Introduction

The plaintiff, Jason Bradley Glass, appeals from the decision of the

Commissioner of the Social Security Administration ("Commissioner") denying his

application for Supplemental Security Income ("SSI") and Child's Insurance

Benefits ("CIB").[1] Mr. Glass timely pursued and exhausted his administrative

---

[1] As required by section 202(d) of the Social Security Act, to be entitled to CIB, the claimant must be over 18 and must have a disability that began before age 22. Plaintiff, then aged 16, protectively filed for CIB and SSI on February 27, 2007. A hearing was held on August 12, 2009, by which time Plaintiff was an adult, and Plaintiff was denied those benefits by the ALJ on November 4, 2009. (Tr. at 159-67.) However, Plaintiff appealed the ALJ's decision, and the Appeals Council remanded the case because "[t]he decision [did] not contain an adequate evaluation of the opinion of treating physician, M. Turner, M.D." and "the hypothetical residual functional capacity posed to the vocational expert ('VE') is inconsistent with the actual residual functional capacity found by

remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). Mr. Glass was twenty-two years old at the time of the Administrative Law Judge's ("ALJ's") decision. (Tr. at 30.)  Mr. Glass claims that he became disabled on June 1, 2005, due to morbid obesity, sleep apnea, and narcolepsy. (Tr. at 25-26.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id*. If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments

the [ALJ]." (*Id.* at 170.) Upon remand, a different ALJ denied Plaintiff's claims for both CIB and SSI.  The plaintiff's request for review of the ALJ's decision was denied by the Appeals Council. (*Id.* at 1-3.) Plaintiff then filed this action.

are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation, the ALJ first determined that Plaintiff, born

on May 13, 1989, had not attained age 22 as of June 1, 2005, the alleged onset date. (Tr. at 25.) The ALJ then determined Mr. Glass has not engaged in substantial gainful activity since the alleged onset of his disability. (*Id.*) According to the ALJ, Plaintiff's morbid obesity, sleep apnea, and narcolepsy are considered "severe" based on the requirements set forth in the regulations. (Tr. at 26.) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.*) The ALJ did not find Mr. Glass's allegations to be totally credible, and he determined that he has the following residual functional capacity: to lift 50 pounds occasionally and 20 pounds frequently; stand six hours in an 8-hour day; sit six hours in an 8-hour day; he should never climb ladders, ropes, or scaffolds; he could occasionally climb ramps and stairs; he should rarely stoop, kneel, crouch, crawl; he can bend; he has no visual, manipulative, or communicative limitations; and there should be no working around hazards or dangerous or moving machinery. (*Id.*)

The ALJ determined that Plaintiff was 16 years old, defined as a younger individual, on the alleged onset date. (Tr. at 30.) The plaintiff has at least a high school education and is able to communicate in English. (*Id.*) The ALJ determined that "transferability of job skills is not an issue because the [plaintiff] does not have past

relevant work." (Tr. at 30.) The ALJ relied on testimony from the vocational expert ("VE") to determine that Mr. Glass has the residual functional capacity to make a "successful adjustment to other work that exists in significant numbers in the national economy" such as "self-service laundry attendant . . . information clerk . . . [or] cashier." (*Id.*) The ALJ concluded the findings by stating that, based on the application for CIB filed protectively on February 27, 2007, the plaintiff was not disabled prior to May 12, 2011, the date he attained age 22, and based on the application for SSI, the plaintiff is not disabled. (Tr. at 30.)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The

substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. Discussion

Mr. Glass alleges that the ALJ's decision should be reversed and remanded for one reason. He states that the ALJ "erred in rejecting [sic] treating physician opinion." (Doc. 13 at 7.)   However, it appears that Plaintiff's argument actually centers around the ALJ's acceptance of the Medical Expert's ("ME's") opinion and

testimony.  Each argument will be addressed in turn.

### A.      Rejection of Treating Physician's Opinion

Plaintiff's stated argument that "[t]he ALJ erred in rejecting [sic] treating physician opinion" is set out with a brief statement of relevant law and a statement regarding Dr. Doekel's, the treating physician's, time spent treating Plaintiff. (Doc. 13 at 7.)  This statement is conclusory and only sets out the basis for an argument, but does not flesh out any full argument. Appellants waive issues by making only conclusory statements without any real argument to support the statement. *See Cont'l Technical Serv., Inc. v. Rockwell Intern. Corp.*, 927 F.2d 1198 (11th Cir. 1991); *Avera v. United Airlines, Inc.*, 465 F.App'x 855 (11th Cir. 2012); *Pruitt v. P.P.G. Industry, Inc.*, 895 F.2d 734 (11th Cir. 1990).

Although Plaintiff's stated argument regarding the rejection of the treating physician's opinion is conclusory and therefore waived, the argument would still fail had the plaintiff properly made the argument. Plaintiff implies that the ALJ erred in accepting the testimony and opinion of Dr. Bryan, the ME, instead of the opinion of the alleged treating physician Dr. Doekel. (Doc. 13 at 7.) According to the plaintiff, Dr. Doekel should be considered a treating physician whose opinion is entitled to controlling weight, and the ME's opinion as a non-examining medical expert is only

entitled to little weight. (*Id.* at 8.) It appears as though the plaintiff contends that Dr. Doekel should be held as a treating physician due to his "seven years of treatment" of the plaintiff beginning in 2005. (Doc. 13 at 7.) If this is the case, then the ALJ does not give controlling weight to a treating physician's opinion. (Tr. at 28-29.)

A treating physician's opinion is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (internal quotations omitted)).  The ALJ rejected Dr. Doekel's opinion regarding Plaintiff's condition because the opinion "fail[ed] to detail how the claimant's ability to perform his activities of daily living [was] impacted" and because the opinion "does not state what role the claimant's noncompliance with his medication and CPAP have played in his difficulties being controlled." (Tr. at 28-29.)

Dr. Doekel was an associate of treating psychiatrist Dr. Pengram at Sleep Disorders Centers of Alabama ("SDCA"), where Plaintiff received diagnosis and treatment for both sleep apnea and narcolepsy, primarily through medication and the use of a CPAP machine. (Tr. at 402-48.) Plaintiff visited the SDCA between August 2005 and September 2011. (*Id.* at 402,  555.)  In a letter dated February 13, 2012, Dr. Doekel expressed his opinion that Plaintiff's symptoms were difficult to control, that

Plaintiff "has an incurable disorder," and that Plaintiff "should be declared to have a permanent disability." (*Id.* at 584.) Thus, the issue becomes whether the ALJ had good cause to discredit Dr. Doekel's opinion.

"Good cause" exists to reject a treating physician's opinion when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). "When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate his reasons." *Id.* The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the

responsibility for assessing a claimant's residual functional capacity. *See, e.g.,* 20 C.F.R. § 404.1546(c).

The ALJ properly concluded that Dr. Doekel's opinion that Plaintiff's symptoms were difficult to control was not supported by the evidence in the medical record, including Dr. Doekel's own treatment notes. First, Dr. Doekel claimed that Plaintiff's "symptoms have been very difficult to control" and that, in spite of attempting different medications, there was "very little control of [Plaintiff's] excessive daytime sleepiness, fatigue and difficulty in maintaining adequate attention/concentration capabilities." (Tr. at 584.) However, Plaintiff's treatment records reveal that Plaintiff's symptoms improved when he complied with his recommended treatment. (Tr. at 26-28, 405, 407, 409, 412-13, 415, 429, 431, 433, 436-37, 439.) For example, records signed by Dr. Doekel and Dr. Pegram state that Plaintiff was "doing much better in school by being able to stay awake during school," that Plaintiff's use of Provigil was making a marked difference in lowering his sleepiness levels, and that after the use of medication Plaintiff was at a "4 or a 5″ on the sleepiness scale as opposed to the previous "level 8 or 9." (*Id.* at 407, 409, 429.) Additionally, Dr. Doekel stated in his February 2012 letter that "[the plaintiff] has an incurable disorder." (Tr. at 584.) However, his treatment notes suggest that "further

weight loss . . . may eliminate the apnea altogether." (Tr. at 409.) Dr. Doekel's notes regarding continuing to modify the use of the CPAP machine and medication also suggest that Dr. Doekel believed the plaintiff's symptoms could be sufficiently managed. (*Id.*) Finally, the ME, Dr. Bryan, noted these inconsistencies between the treatment records and the significant limitations that Dr. Doekel had assessed. (Tr. at 55.)

In sum, the other medical evidence in the record, including Dr. Doekel's own treatment notes, contradict his February 2012 letter opining that the plaintiff was permanently disabled. The weight of the record evidence actually shows that Plaintiff's symptoms responded well to treatment when Plaintiff was compliant with treatment. Thus, assuming that Plaintiff had properly raised the argument before this Court, it would still fail, as substantial evidence exists to support the ALJ's decision to reject Dr. Doekel's opinion.

**B.    Medical Expert's Opinion**

The majority of Plaintiff's brief discusses the opinion of Dr. Bryan, the non-examining medical expert who reviewed Plaintiff's medical history and the exhibits and testified at Plaintiff's hearing. (*See* Tr. at 43-46.) Dr. Bryan concluded that he "could not find a listing describing anything close to the impairments that [Plaintiff]

had" and therefore was unable to say that Plaintiff "met or equaled any of the listings." (Tr. at 57-58.) Plaintiff appears to make two arguments with respect to Dr. Bryan's opinion. First, Plaintiff alleges that Listing 3.10 would apply to Plaintiff and that the ME "did not appear to be familiar with the relevant Listings." (Doc. 13 at 13.) Second, Plaintiff argues that the ME "appeared to be in the process of changing his mind about Plaintiff's level of functioning when his testimony was cut off by the ALJ." (*Id.*) This argument implies that the ALJ improperly curtailed the ME's allegedly changing opinion, and therefore it was legal error for the ALJ to accept the ME's initial opinion. (*Id.*)

Within the classification of acceptable medical sources are the following different types of sources which are entitled to different weights of opinion: 1) a treating source, which is defined in the regulations as "your physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2) a non-treating source, which is defined as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you;" and 3) a non-examining source, which is "a physician, psychologist, or other acceptable medical

source who has not examined you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . ." 20 C.F.R. § 404.1502. The regulations and case law set forth a general preference for treating sources' opinions over those of non-treating sources, and non-treating sources over non-examining sources. *See* 20 C.F.R. § 404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). However, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418-19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, F.2d 1233, 1240 (11th Cir. 1983)). Importantly, the weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

Plaintiff's first argument is essentially that the ALJ erred in finding that Plaintiff failed to meet Listing 3.10. In order for a plaintiff to properly allege that his or her impairment meets a listing, "[the impairment] must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how

severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original).  Plaintiff claims that the ME incorrectly determined that no listing applied in this case because, as Plaintiff contends, Listing 3.10 applies. (Doc. 13 at 9.) Also, Plaintiff asserts that his "history of hypertension and breathing problems with lung scarring, his morbid obesity and mental functioning and affect" were all factors that should have been analyzed under Listing 3.10. (*Id.*)

Listing 3.10, which relates to sleep-related breathing disorders, is a reference listing, meaning that in order to satisfy the requirements for Listing 3.10, a plaintiff must show that his impairment satisfies the requirements of either Listing 3.09 or Listing 12.02.  *See* 20 C.F.R. § 404, Subpart P, Appendix 1.  Listing 3.09, which addresses cor pulmonale secondary to chronic vascular hypertension, or failure of the right side of the heart, requires "[c]linical evidence of cor pulmonale (documented according to 3.00G) with: A. Mean pulmonary artery pressure greater than 40 mm Hg; or B. Arterial hypoexima." 20 C.F.R. § 404, Subpart P, Appendix 1.

As long as the record contains "sufficient evidence for the [ALJ] to make an informed decision" then the ALJ has met the prescribed standard for making a decision.  *Rivers v. Astrue*, 901 F. Supp. 2d 1317, 1328 (S.D. Ala. 2012).  There is sufficient evidence in the record for the ALJ to determine that Plaintiff did not meet

all of the requirements for Listing 3.09. Plaintiff does not cite to anything in the record specifically regarding mean pulmonary artery pressure or arterial hypoexima. While Plaintiff does mention his "history of hypertension and breathing problems with lung scarring," there is nothing specifically relating to the requirements under Listing 3.09. (Doc. 13 at 11.) Therefore, the ALJ's finding that Plaintiff's impairments did not meet Listing 3.09 is supported by sufficient evidence within the record.

As noted, Listing 3.10 can also be analyzed under Listing 12.02 in order for a plaintiff to meet the Listing 3.10 requirements. Listing 12.02, pertaining to organic mental disorders, requires "[p]sychological or behavioral abnormalities associated with a dysfunction of the brain." (*Id.*) The relevant criteria requires demonstration of a loss of specific cognitive abilities or affective changes; the medically documented persistence of one of the following: disorientation as to time and place, memory impairment, perceptual or thinking disturbances, change in personality, mood disturbance, emotional lability, or loss of measured intellectual ability of at least 15 I.Q. points; and at least two of the following: marked restriction in activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, or repeated episodes of decompensation, each of extended duration. *See* 20 C.F.R. pt. 404, subpt. P, app. 1,

§ 12.02.  In order to analyze an impairment under Listing 12.02, the ALJ will look at the "history and physical examination or laboratory tests" to determine if they "demonstrate the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities." (*Id.*)

Plaintiff broadly contends that his "mental functioning and affect were surely factors that could have been considered under this Listing from a standpoint of medical equivalence." (Doc. 13 at 11.)  The concept of medical equivalence allows a plaintiff's impairment to satisfy a listed impairment if it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526.  In order for medical equivalence to apply when an impairment is "not described in appendix 1, [the ALJ] will compare [a plaintiff's] findings with those for closely analogous listed impairments." 20 C.F.R. § 404.1526.  There is sufficient evidence in the record to support the ALJ's finding that Plaintiff's impairments did not fall under Listing 12.02 because not all of the requirements are met and there is no closely analogous listing that would apply in this instance.  Plaintiff has failed to point to anything in the record reflecting evidence of a loss of any specific cognitive abilities, the documented persistence of disorientation as to time and place, memory impairment, perceptual or

thinking disturbances, change in personality, mood disturbance, emotional lability, or loss of measured intellectual ability of at least 15 I.Q. points. In contrast, Plaintiff's medical records repeatedly show normal orientation, and no evidence of mood disturbances or personality changes. (Tr. at 523, 526, 529, 543, 546, 549, 553.) At most, Plaintiff complained of memory problems to a doctor once, in August 2005 (tr. at 402, 426), but there is no evidence showing any objective testing supporting any persistence of a memory impairment. Therefore, the ALJ's finding that Plaintiff's impairments did not equal any listing was proper in light of sufficient evidence supporting the ALJ's decision.

Plaintiff also claims that the ALJ "did not appear to satisfactorily utilize the services of the ME at the hearing who appeared to be in the process of changing his mind about Plaintiff's level of functioning" and that the ME's changing opinion was interrupted by the ALJ's *ex parte* discussion with Plaintiff's counsel. (Doc. 13 at 13.)

Plaintiff's assertion is undermined by the hearing transcript. During the ME's testimony at Plaintiff's hearing, Plaintiff's counsel read exhibit 27F, Dr. Doekel's letter. As noted, the letter contained Dr. Doekel's opinion that the plaintiff "has an incurable disorder," and that the plaintiff "should be declared to have a permanent disability" due to his symptoms that are "incapacitating at times and causes [the

plaintiff] to have a total abandonment of even the simplest tasks." (Tr. at 584.)  After hearing the letter, the ME mentioned that the letter was "more comprehensive than anything that [he had] seen in the record." (Tr. at 55.) The ME also stated that his "opinion . . . after hearing the February 2012 letter in detail, is more restricted than it would have been prior to [hearing Dr. Doekel's letter]." (*Id.* at 58.)  The ALJ then asked Dr. Bryan if he would mind if he called him back in five minutes to go off the record to talk to Plaintiff's counsel.  (Tr. at 58-59.)  The ALJ then went back on the record, explained the basis of the discussion held off the record, and obtained additional testimony from Dr. Bryan to ask for his assessment of Plaintiff's RFC.  (Tr. at 59-61.)

Nothing in the hearing transcript indicates that the ALJ influenced Dr. Bryan's opinion in any way or that the ALJ's decision to go off the record impacted Dr. Bryan's ultimate assessment of Plaintiff's RFC.  Indeed, the ME very clearly identified his opinion on Plaintiff's level of functioning. (*Id.* at 59-61.) The ME had the opportunity to voice his concerns and any changes in his opinion, but the ME did not raise any questions to the ALJ at the conclusion of questioning. (*Id.* at 61.) There is sufficient evidence in the record that the ME had a chance to voice his concern and did not take that opportunity to do so. Therefore, the plaintiff's claim that the ALJ did

not properly utilize the ME's services due to the ME's potentially changing opinion is not supported by the evidence. There is sufficient evidence in the record supporting the ALJ's decision to accept the ME's testimony.

In any event, the ALJ is "not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists" and the ALJ must consider those findings "as opinion evidence." 20 C.F.R. § 416.927(e)(2)(I). The ALJ was required to "explain in the decision the weight given to the opinions of a State agency medical or psychological consultant." 20 C.F.R. § 416.927(e)(2)(ii). The ALJ did provide sufficient explanation regarding the weight given not only to the ME, but also to the treating physician and four other medical professionals. (Tr. 26-29.)

Plaintiff requests a sentence four remand where "[t]he court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security." 42 U.S.C. § 405(g). The ALJ's decision is entitled to "substantial deference" by the court. *Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005). The Court is satisfied that there was substantial evidence to support the ALJ's findings and reliance on the ME's testimony; therefore, there will be no sentence four remand on the pleadings

and the evidence.

## IV.   Conclusion

Upon review of the administrative record, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this <u>13th</u> day of <u>June 2014</u>.

L. Scott Coogler
United States District Judge
[160704]